**ALABAMA POWER COMPANY, Georgia Power Company, Gulf Power Company, Mississippi Power Company, Savannah Electric and Power Company, and Southern Company Services, Inc., Petitioners,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 92–7027.

United States Court of Appeals, Eleventh Circuit.

June 3, 1994.

Mark A. Crosswhite, Rodney O. Mundy, Dan H. McCrary, Balch & Bingham, Birmingham, AL, for AL Power Co.

Robert H. Forry, Troutman Sanders, Atlanta, GA, for GA Power.

Samuel Soopper, F.E.R.C., Washington, DC, for F.E.R.C.

Edison Holland, Jr., Beggs & Lane, Pensacola, FL, for Gulf Power.

Ben H. Stone, Eaton & Cottrell, Gulfport, MS, for MS Power.

Leamon R. Holliday, III, Bouhan, Williams & Levy, Savannah, GA, for Savannah Elec.

Before HATCHETT and COX, Circuit Judges, and RONEY, Senior Circuit Judge.

RONEY, Senior Circuit Judge:

This case involves the timeliness of a Federal Energy Regulatory Commission (FERC) order requiring five electric power companies to revise one of their rate filings. The petitioners, the affected power companies and their agent, contend the order was entered after the expiration of the statutory 60–day period within which the FERC is permitted to review rate filings. Holding that the agency's order was timely, we affirm.

 Section 205 of the Federal Power Act, 16 U.S.C. § 824d, requires public utilities engaged in the interstate sale and transmission of electric power to file their rates and charges with the FERC for review. When a public utility seeks to change its previously filed rates, the FERC has 60 days from the date of filing to review the new rates and suspend them if they do not appear just and reasonable. *See* 16 U.S.C. § 824d(d). If the FERC does not exercise its suspension power within the 60–day period, the new rates take effect automatically. *Indiana & Michigan Electric Co. v. Federal Power Comm'n,* 502 F.2d 336, 341 (D.C.Cir.1974), *cert. denied,* 420 U.S. 946, 95 S.Ct. 1326, 43 L.Ed.2d 424 (1975).

The issue here is whether the 60–day review period begins only when the filing is complete for *every* utility when several utilities jointly file their respective rates, or whether it runs as to *any utility* in the group that is not affected by a timely amendment by another member of the group. We hold that the Commission could appropriately decide that the review period begins only after every utility's filing has been completed.

In December 1991, Alabama Power Company, Georgia Power Company, Gulf Power Company, Mississippi Power Company, and Savannah Electric and Power Company (the Southern Companies) entered into a contract with Duke Power Company (Duke), setting forth the terms and conditions under which they would provide each other with electric power services. The contract, which superseded a prior agreement and established new rates for each party, is composed of several parts. The main document, entitled "Interchange Contract," contains the general terms and conditions of power supply as well as various administrative provisions. Attached to that document are a number of service schedules that set forth, among other things, various formulas used to calculate the rates charged for the specific services that either party may periodically request. Finally, the contract includes two additional appendices—the Southern Companies' Manual and the Duke Appendix—which set forth the seller-specific cost inputs to the formulas contained in the service schedules. These documents comprise a single, integrated agreement, referred to herein as the "Interchange Contract."

Under the statute, the Southern Companies and Duke were required to file these

new rates with the FERC. On February 6, 1992, Southern Company Services, Inc., acting as an agent for the Southern Companies, submitted the Interchange Contract to the FERC. Duke, rather than submitting duplicative materials, satisfied its filing obligation by providing the agent with its own filing fee and a certificate of its concurrence in the Interchange Contract. The agent delivered Duke's fee and certificate of concurrence to the FERC, along with the Interchange Contract.

Less than 60 days after the filing, the FERC contacted Duke and expressed doubt regarding the reasonableness of its proposed rates. On April 1, 1992, in accordance with the FERC's instructions, Duke amended its Appendix to the Interchange Contract by lowering the return on common equity incorporated in its rates. The amendment affected the rates charged by Duke, but not those charged by the Southern Companies.

On May 29, 1992, the FERC issued an order approving Duke's rates as amended. The order, however, required the Southern Companies to file revisions of certain aspects of their rates. The petitioners requested a rehearing, arguing that the FERC had improperly ordered modification of the Southern Companies' rates more than 60 days after they were filed. The FERC denied rehearing on the ground that the 60–day period for reviewing all the rates in the Interchange Contract started over when Duke revised its rates on April 1, and that the May 29 order was therefore timely.

The petitioners now petition for review of the FERC's decision. Although they do not dispute that the period for reviewing *Duke's* rates began again on April 1, they argue that because Duke's amendment did not affect the *Southern Companies'* rates, which had been on file since February 6, those rates became effective by operation of law in early April. The sole issue on appeal therefore is whether the FERC may properly decide that when several utilities jointly file their respective rates in a single contract, the 60–day review period begins only when the filing is complete for every utility.

■ This case requires us to review the FERC's construction of the Federal Power Act, a statute it administers. The standard of review is determined by whether Congress has spoken to the precise issue presented. If it has, the agency's interpretation is accorded no deference, and the court simply gives effect to Congress's unambiguously expressed intent. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). If Congress has not addressed the issue, however, the court must defer to the agency's construction so long as it is reasonable. *Id.* The agency's construction will be deemed reasonable if it is not arbitrary, capricious, or clearly contrary to law. *Id.* at 844, 104 S.Ct. at 2782; *U.S. Mosaic Tile Co., Inc. v. NLRB*, 935 F.2d 1249, 1255 (11th Cir.1991), *cert. denied sub nom. Williams Tile & Terrazzo Co. v. NLRB*, —— U.S. ——, 112 S.Ct. 871, 116 L.Ed.2d 776 (1992).

■ The petitioners contend that the FERC's decision to treat Duke's rates and the Southern Companies' rates as having the same filing date deserves no deference because it conflicts with the plain meaning of § 205 of the Federal Power Act. Specifically, they argue that because § 205 imposes an independent obligation on every public utility to file its own rate schedules, Duke's certificate of concurrence must be viewed as a separate rate filing. Therefore, they contend, the FERC could not, consistent with the statute, treat the Southern Companies' and Duke's separate filings as a single set of rates for the purpose of review.

Although the petitioners are correct that § 205 requires each utility to file its own rates, the statute is silent as to when such a filing becomes final for the purpose of commencing the 60–day review period. Section 205(d) merely provides that a public utility may change its filed rates only "after sixty days' notice to the Commission", and that "[s]uch notice shall be given by filing with the Commission . . . new schedules stating plainly the change or changes to be made in the schedule or schedules then in force." 16 U.S.C. § 824d(d). Congress did not set forth any filing procedures. Rather, it expressly authorized the FERC to prescribe rules and

regulations pertaining to rate filings and to designate the form of such filings. 16 U.S.C. § 824d(c). It was pursuant to that delegation of authority that the FERC promulgated 18 C.F.R. § 35.1 (1993), which permits the use of certificates of concurrence and establishes the joint filing procedure used in this case. Because Congress did not even envision the joint filing procedure at issue here, much less address precise questions regarding the consequences of its use, we review the FERC's decision to determine only if it is based on a reasonable interpretation of the statute.

The FERC's decision to treat distinct, but jointly filed, rates as sharing one filing date is clearly reasonable. Although joint filings set separate rates for different utilities, that does not mean those rates are completely independent. Indeed, it appears that joint filings are often made in connection with contracts, such as the one at issue here, wherein the parties agree to provide services to each other beginning on a given date and subject to specific terms and conditions. If the FERC permitted one party's contract rates to become effective before another's, it might significantly alter a carefully negotiated and structured agreement. As the agency noted in its order denying rehearing, such a ruling could result in one party having to provide services on the agreed upon date without receiving like services until a later date. The FERC's practice is a reasonable way to avoid such problems.

The petitioners respond that that explanation does not justify the FERC's action in this case because the Interchange Contract is structured in such a way that Duke's unilateral rate change did not meaningfully affect the parties' agreement. They contend, moreover, that they "would not have objected" to any delay in the receipt of services from Duke caused by the amendment. The FERC, however, is not required to guess about what the parties might find objectionable, or to consider whether a particular change might compromise an entire agreement. Rather, to promote certainty and to enable it to efficiently review numerous and complex rate schedules, the FERC acts rea-sonably by simply treating all joint filings the same way.

The petitioners contend finally that the FERC's decision should be reversed because it contradicts the agency's own regulations and precedent. While it is true that a court will not defer to an agency's litigating position that is wholly unsupported by regulations, rulings, or administrative practice, *Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 212, 109 S.Ct. 468, 473–74, 102 L.Ed.2d 493 (1988), the petitioners have made no such showing here. For the most part, the regulations and administrative rulings the petitioners rely upon have no relevance to the 60–day review period. The only cited authority pertinent to that issue is the regulation set forth at 18 C.F.R. § 35.2(c) (1993), which defines the term "filing date" as "the date on which a rate schedule filing is completed by the receipt in the office of the Secretary of all supporting cost and other data required to be filed in compliance with the requirements of this part.…" That definition does not compel a result one way or the other in this case. Rather, the result depends on the FERC's interpretation of that regulation as to when a joint filing is considered complete. The FERC contends, without dispute, that it has construed the regulation in such a way as to create a "longstanding, consistent … practice" of treating joint filings as complete only when each utility's proposed rates are final. This Court will not disturb such an established interpretation where, as here, it is not plainly inconsistent with the wording of the regulation. *United States v. Larionoff*, 431 U.S. 864, 872–73, 97 S.Ct. 2150, 2155–56, 53 L.Ed.2d 48 (1977).

AFFIRMED.